IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETER L.[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 566 |
| v. ) | |
| ) | Magistrate Judge Beth W. Jantz |
| ANDREW SAUL, Commissioner of ) | |
| Social Security,[2] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Peter L.'s application for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Dkt. 7, Joint Consent.] For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 15, Pl.'s Mot.] is denied, and the Commissioner's cross-motion for summary judgment [dkt. 23, Def.'s Mot.] is granted.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by his first name and the first initial of his last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul has been substituted for his predecessor.

**BACKGROUND**

I.  **Procedural History**

On February 4, 2015, Plaintiff filed a claim for DIB, alleging disability beginning December 12, 2012. [Dkt. 10, R. at 98, 202.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 93, 98.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 25, 2017. [R. 12-60, 98.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 98.] Vocational expert ("VE") Bruce S. Growick also testified. [*Id.*] On December 5, 2017, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. [R. 116.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [R. 1-8.]

II. **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 101-16.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, December 12, 2012, through his date last insured, March 31, 2016. [*Id.* at 101.] At step two, the ALJ concluded that Plaintiff had the severe impairments of lumbar disc disease, history of hypotension, and depression. [*Id.*] The ALJ concluded at step three that his impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [*Id.* at 102-04.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work, including lifting up to 50 pounds occasionally and lifting or carrying up to 25 pounds frequently, with the following limitations: he should never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs, as well as

occasionally balance, stoop, crouch, kneel and crawl; should avoid concentrated exposure to excessive vibration, concentrated use of hazardous machinery, and concentrated exposure to unprotected heights; and work must be limited to simple, routine and repetitive tasks, performed in a work environment free of fast-paced production requirements with only brief, occasional interaction with the public, as well as only brief, occasional interaction with co-workers and supervisors. [*Id*. at 104-15.] At step four, the ALJ concluded that Plaintiff would be unable to perform him past relevant work as a carpenter, delivery driver, or truck driver. [*Id.* at 114-15.] At step five, the ALJ concluded, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, that Plaintiff could perform jobs existing in significant numbers in the national economy such as a laundry worker or packer, leading to a finding that he is not disabled under the Social Security Act. [*Id*. at 115-16.]

## **DISCUSSION**

### **I.     Judicial Review**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a).

"A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must

4

provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

## II. Analysis

Plaintiff argues that the ALJ committed reversible error in three ways: (1) by failing to account for Plaintiff's limitations in concentration, persistence, and pace ("CPP") in his hypothetical to the VE and in his RFC determination; (2) by discounting the evaluative opinion of Dr. Mark Amdur; and (3) by failing to build a logical bridge from the evidence to his conclusions regarding Plaintiff's physical limitations and pain. [Dkt. 16, Pl.'s Mem. at 11-16; dkt. 25, Pl.'s Reply at 1-8.] The Commissioner argues that the ALJ's decision must be affirmed because it is supported by substantial evidence, and because the ALJ adequately accounted for Plaintiff's CPP, properly evaluated the record including physicians' opinions, and thoroughly explained his reasoning in determining Plaintiff's RFC. [Dkt. 24, Def.'s Mem. at 3-15.]

For all of the reasons explained below, this Court agrees with the Commissioner, and affirms the ALJ's decision.

***Concentration, Persistence, and Pace***

According to Plaintiff, the ALJ failed to account for his moderate limitations in CPP in both the hypotheticals posed to the VE and the corresponding RFC determination. [Pl.'s Mem. at 11-12.] Specifically, Plaintiff argues that instead of providing specific limitations regarding

5

Plaintiff's CPP limitations, the ALJ impermissibly relied on a shorthand phrase in limiting Plaintiff to "simple, routine, and repetitive tasks, performed in a work environment free of fast-paced production requirements." [Pl.'s Mem. at 11, quoting R. 104.] The Commissioner does not dispute that the ALJ did not expressly refer to CPP limitations in questioning the VE, but argues that by limiting Plaintiff to simple, routine work with simple work-related decisions and no fast-paced production quotas, the ALJ properly relied on the agency physicians' opinions of Plaintiff's capabilities. [Def.'s Mem. at 13-15.]

Both the RFC and the hypothetical questions presented to a VE must incorporate the "totality of a claimant's limitations," including any "deficiencies of concentration, persistence and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). As a matter of form, the ALJ need not use this exact terminology in formulating questions to the VE, but as a matter of substance, "the ALJ must ensure that the VE is apprised fully of the claimant's limitations so that the VE can exclude those jobs that the claimant would be unable to perform." *Crump*, 932 F.3d at 570 (internal quotation omitted); *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020). The Seventh Circuit has made clear that the "the most effective way" to inform the VE of a claimant's limitations is to include them all directly in the hypotheticals asked. *O'Connor-Spinner*, 627 F.3d at 619. The Seventh Circuit has made it equally clear, however, that "[t]he law does not require ALJs to use certain words, or to refrain from using others, to describe the pace at which a claimant is able to work." *Martin*, 950 F.3d at 374. Instead, the question for the court on review is simply whether the ALJ "account[ed] for the totality of a claimant's limitations in determining the proper RFC." *Id.* (internal quotation and citation omitted).

In this case, the ALJ properly accounted for all of the mental limitations he found. *See Kuykendoll v. Saul*, 801 F. App'x 433, 438 (7th Cir. 2020) (no error where ALJ connected assigned

6

limitations to CPP deficits he found). In his mental impairment analysis at step three, the ALJ determined that Plaintiff had moderate CPP limitations, and a moderate limitation in interacting with others. [*See* R. 103.] The ALJ acknowledged among other things that Plaintiff had testified to difficulty with depression with frequent crying spells and anger outbursts, but also noted that Plaintiff reported getting along well with others and that his general psychiatric examinations had demonstrated his appropriate mood, affect, and behavior, with no mood swings or memory loss, and normal attention, concentration, insight and judgment. [*Id*.] As the ALJ observed, evidence in the record showed unremarkable psychiatric examinations, and Plaintiff's treating physician had noted that although Plaintiff had not followed all prior recommendations concerning his depression, he was nevertheless doing well and was even brainstorming about starting his own business. [*Id*.] In discussing his determination of Plaintiff's RFC, the ALJ further observed that on mental status examinations, Plaintiff's thought processes were generally well organized, comprehension was intact, and he was fully alert and oriented. [R. 108-09.]

In questioning the VE, the ALJ asked about the work prospects for a hypothetical person with Plaintiff's physical limitations, who would also be limited to "simple, routine, repetitive tasks performed in a work environment free of fast-paced production requirements and with few if any workplace changes . . . [and who is further] limited to only brief occasional interaction with others, that is to say members of the public, coworkers, and supervisors." [R. 52-53.] Unlike in Plaintiff's cited case of *Varga v. Colvin*, 794 F.3d 809, 814-15 (7th Cir. 2015), this formulation follows directly from the opinions of the agency psychologists who both considered evidence of Plaintiff's moderate CPP limitations and translated those findings into RFC opinions that he would be able to understand and remember simple instructions, and sustain work without special supervision. [R. 71-72, 88-90.] The ALJ further followed the more restrictive of the two psychologists who

7

also opined that Plaintiff would be moderately limited in his ability to interact appropriately with co-workers, supervisors, and the general public. [R. 88-89.] The ALJ appropriately found the opinions supported and consistent with the evidence in the record, including Plaintiff's ability to recall number sequences and perform simple calculations, the fact that the examiners had reviewed all of the records, and the observations and examination by Plaintiff's treating physician, Dr. Shah. [*See* R. 103, 108, 113-14.]. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (no error where ALJ considered CPP limitations supported by record evidence and tailored RFC accordingly); *Burmester v. Berryhill* 920 F.3d 507, 511 (7th Cir. 2019) (same); *Cihlar v. Berryhill*, 706 F. App'x 881, 883-84 (7th Cir. 2020) (no error where ALJ accommodated CPP limitations consistent with the consultative examiner's opinion). The ALJ considered all of Plaintiff's limitations that were supported by the record, connected the record evidence to the limitations included in the RFC finding, and tailored Plaintiff's ability to work accordingly. *See Kuykendoll*, 801 F. App'x at 438; *Cihlar*, 706 F. App'x at 883-84; *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019) (no error where ALJ adequately accounted for moderate CPP limitations by formulating limitations that were based on record evidence).

This is so despite Plaintiff's attempts to distinguish the ALJ's formulation from the opinions of the state agency psychologists. [*See* Pl.'s Reply at 1-3.] According to Plaintiff, the ALJ's formulation did not follow from the state agency psychologists because the more restrictive one not only opined that plaintiff could handle "[n]o fast paced tasks with strict production quotas," but also that "[v]ariable paced tasks with end of day production quotas *would be acceptable*." [Pl.'s Reply at 2; R. 90 (emphasis added).] Plaintiff argues that the ALJ therefore erred in formulating hypotheticals that only included a limitation to be free from fast paced production requirements and said nothing about variable paced tasks. [Pl.'s Reply at 2.]

8

Plaintiff argument fails, however, because it rests on an asserted omission of what Plaintiff *could do* (variable paced tasks), as opposed to what he *could not* (fast paced production requirements). The ALJ's task in questioning the VE and in formulating an RFC was not to recite all that Plaintiff *could* handle, but rather to accommodate his *limitations*. *See Crump*, 932 F.3d at 570.

Likewise, Plaintiff's assertion that the ALJ failed to incorporate a limitation to "simple 1-2 step tasks," as opined by the agency examiner, is equally unpersuasive. [Pl.'s Reply at 2.] This phraseology does not contradict the ALJ's limitation of Plaintiff to "simple, routine, repetitive tasks," but is indeed consistent with it. Accordingly, the ALJ accounted for the CPP limitations he found by excluding from the hypotheticals to the VE and the corresponding RFC those tasks that Plaintiff would be unable to perform. *See Burmester*, 920 F.3d at 511; *Kuykendoll*, 801 F. App'x at 438.

### *Examining Physician's Opinion*

Plaintiff next argues that the ALJ erred in discounting the opinion of Dr. Mark Amdur, who conducted a September 21, 2015 consultative psychological examination of Plaintiff and opined that Plaintiff's major depression had rendered him markedly apprehensive and socially avoidant, unable to relate effectively to coworkers or supervisors, unable to concentrate or maintain his attention on simple tasks, and unable to tolerate work stresses. [Pl.'s Mem. at 12-14; R. 113, 2198-2202.] As the ALJ observed, contrary to the evidence from Plaintiff's treating physicians of his appropriate mood, affect and behavior with sufficient fund of knowledge, sufficient language, normal judgment, insight, attention span and concentration, and lack of compulsive behavior or suicidal ideation, Plaintiff "related a different picture concerning the impairments alleged in this case" when he met with Dr. Amdur, sitting rigidly during the appointment, clenching an article of

9

clothing, reporting an inability to concentrate, and seeming both distraught and in pain. [R. 108-109, 113-114.] As the ALJ explained, Plaintiff's statements to Dr. Amdur about distractibility and poor concentration also contrasted with his statements to his treating physicians that he prepares his own meals, does daily housework, pays his own bills, goes outside daily, follows instructions "alright" and handles changes in routine "great, if changes are for the best." [R. 103, 109.] The ALJ assigned little weight to Dr. Amdur's opinion on the basis that it was inconsistent with the objective medical record, and that it was based on a single examination of Plaintiff during which Plaintiff's presentation "greatly contradict[ed] his presentation during examinations with his treating physicians, as well as their assessments of his physical and mental health." [R. 109-110.]

As the ALJ observed, the extreme limitations Dr. Amdur reported based on his single consultative examination of Plaintiff stood in stark contradiction to the picture demonstrated in the longitudinal record presented by Plaintiff and his treating physicians. [R. 108-109, 113-114.] The ALJ found it particularly noteworthy that Plaintiff reported to Dr. Amdur very limited daily activities and that he sat rigidly during the appointment, clenching an item of clothing and in apparent pain, whereas during appointments with his treating physicians around the same time period Plaintiff presented in no apparent acute distress, reported that he was doing well, and was even brainstorming about ways to start his own business. [*See* R. 109, citing 657, 2198-2202, 2319.]

Despite the ALJ's extensive discussion juxtaposing Plaintiff's presentation to Dr. Amdur with medical records and assessments of Plaintiff's treating providers [*see* R. 105-114], Plaintiff argues that the ALJ improperly discounted Dr. Amdur's opinion on the basis that it was solicited by Plaintiff's then-counsel. [*See* Pl.'s Mem. at 12-14.] Although the ALJ accurately described Dr. Amdur's examination as having been conducted at the request of Plaintiff's representative,

10

there is no indication that the ALJ discounted it for this reason. [*See* R. 109, 113-14.] Instead, what the ALJ observed was that Dr. Amdur's opinion starkly contradicted with Plaintiff's presentation to his treating physicians and had not been shared with any of them. [*See* R. 113-114.]

As the Commissioner correctly observes, the ALJ's determination of the weight to afford Dr. Amdur's opinion complied with the then-applicable Social Security Regulations, which required the ALJ to weigh Dr. Amdur's opinion in light of factors such as the extent of any treatment relationship, whether his opinion was supported with medical signs and laboratory findings, and whether his opinion was consistent with the record as a whole. *See* 20 C.F.R. §404.1527(c)(1)-(4); *Elder*, 529 F.3d at 415. Unlike Plaintiff's cited authority of *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009), in which the Seventh Circuit found error in the ALJ's speculative decision to discount a physician's opinion on the basis that it had been solicited by the claimant's counsel, here, the ALJ properly considered whether it was supported by the record, and appropriately assigned it less weight based on Dr. Amdur's lack of treatment relationship with Plaintiff and its inconsistency with the other records, including those of Plaintiff's treating physician, Dr. Shaw, who had prescribed Plaintiff's antidepressant and was more familiar with his condition. [*See* R. 109, 113-114.]

Plaintiff argues further, however, that the ALJ erred in concluding that Dr. Amdur's report was contradicted by Plaintiff's statements to his treating physician. [Pl.'s Mem. at 13; Pl.'s Reply 4-5.] According to Plaintiff, the ALJ reached this decision by cherry-picking from the medical records. [*See* Pl.'s Mem. at 13.] Neither the ALJ's decision nor the treatment records Plaintiff cites, however, bear out this characterization. To the contrary, the ALJ carefully reviewed Plaintiff's treatment records dated in the months prior to and following his visit with Dr. Amdur,

11

and appropriately discerned the contradiction between Plaintiff's presentation to Dr. Amdur and Dr. Amdur's resulting opinion versus Plaintiff's unremarkable psychiatric examinations, repeated reports of improved pain following surgery, reports of improved depression symptoms, and appropriate mood and affect. [R. 109-114.]

Notably, the records to which Plaintiff cites in arguing that the ALJ should have credited the consultative examination opinion of Dr. Amdur over the opinion of his treating physician further undermine his argument. [*See* Pl.'s Mem. at 13.] Consistent with the ALJ's discussion, the records Plaintiff cites both document his depression and note it is "fairly controlled," memorialize his report that a prescribed antidepressant had improved his symptoms, and note his normal mental status examinations. [*See* R. 2212, 2223, 2234-35.] Far from suggesting impermissible cherry-picking, the cited records further support the ALJ's reasoning.

The Court is unpersuaded by Plaintiff's attempts to explain away the inconsistencies in the record cited by the ALJ. According to Plaintiff, it is understandable that he presented differently to Dr. Amdur than to his treating physician, and the ALJ's conclusion otherwise is based on an impermissible assumption that an individual who had never received mental health care would immediately be comfortable bringing it up with the doctor who had treated his other ailments. [Pl.'s Reply at 4-5.] A problem with Plaintiff's argument is that it requires the illogical assumption that Plaintiff was not comfortable enough to make disclosures to the physician who treated his depression, Dr. Shaw, but was comfortable enough to make such disclosures to the physician he did not see for treatment, Dr. Amdur. Plaintiff's argument also fails to explain why Plaintiff presented so differently to Dr. Shaw even after Dr. Amdur's consultation.

Those observations aside, in any event, it is the ALJ's role, to which this Court is required to be deferential, *see Stephens*, 888 F.3d at 327, to render such conclusions from the record, and

12

in this case, the ALJ applied the appropriate analysis in crediting the opinion of Plaintiff's treating physician over that of a consulting examiner. *See* 20 C.F.R.§ 404.1527(c). The Court declines Plaintiff's invitation to substitute its own judgment for the reasoned consideration of the ALJ. *See Stephens*, 888 F.3d at 327; *L.D.R. v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019) (reviewing court considers whether ALJ's determination is supported by substantial evidence and determined under correct legal standards; it does not reweigh evidence or substitute its own judgment for that of the ALJ).

Nor is the Court persuaded by Plaintiff's argument that the ALJ's discounting of Dr. Amdur's opinion was not well supported because Dr. Amdur's opinion was consistent with the GAF ("Global Assessment of Functioning") score obtained during a consultative examination with Dr. Roberta Stahnke. [Pl.'s Mem. at 13-14.] As the ALJ explained, he assigned little weight to Plaintiff's GAF score because it notably exceeded Dr. Stahnke's examination findings, during which Plaintiff was fully alert and oriented, able to repeat six numbers forward and four numbers backward, correctly named the current and multiple former presidents, and correctly performed simple addition and subtraction. [*See* R. 114, citing R. 579-86.] The ALJ further explained that he generally gives less weight to a GAF score because it is simply a snapshot determination of a particular clinician's subjective evaluation at a single point of time, and it is no longer recognized in the *Diagnostic and Statistical Manual of Mental Disorders, 5th Edition,* as a tool to measure mental functioning. [R. 114.] The Seventh Circuit has similarly recognized that a GAF score is not an opinion as to a claimant's RFC. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (per curiam) ("GAF scores . . . are measures of both severity of symptoms *and* functional level. Because the final GAF rating always reflects the worse of the two, the score does not reflect the clinician's opinion of functional capacity. Accordingly, nowhere do the Social Security

13

regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." (internal quotation and citation omitted)).

Plaintiff's arguments notwithstanding, Dr. Stahnke did not offer an opinion on Plaintiff's ability to perform work-related tasks on a sustained basis [*see* R. 583-88], and the GAF score she obtained during her examination does not defeat the ALJ's reasoning in limiting the weight afforded to Dr. Amdur's opinion. *See Denton*, 596 F.3d at 425. Further, even if the GAF score is considered consistent with Dr. Amdur's opinion, that would not change the ALJ's reasoned determination that Plaintiff's presentation during his consultative examination contradicted the longitudinal record created with his treating physicians. [*See* R. 109-114.] It was incumbent on the ALJ to assess Dr. Amdur's opinion by application of the regulatory factors and in light of the relevant evidence, and the record demonstrates that is what the ALJ did. *See Stepp v. Colvin,* 795 F.3d 711, 719 (7th Cir. 2015) (affirming ALJ's rejection of medical opinion that was inconsistent with other medical evidence).

### *Logical Bridge and the RFC*

Finally, Plaintiff argues that the ALJ erred in failing to address certain evidence and in selectively considering other evidence to formulate an RFC that did not adequately account for Plaintiff's symptoms and complaints of pain. [Pl.'s Mem. at 14-15; Pl.'s Reply at 6-8.] As a result, Plaintiff argues, the ALJ failed to build a logical bridge between the evidence and his conclusion in determining Plaintiff's RFC. [Pl.'s Mem. at 14-15; Pl.'s Reply at 6-8.] Because the ALJ provided good reasons supported by the record for his RFC determination, and the Court can readily trace the path of his reasoning, however, Plaintiff's assignment of error based on the purported lack of a logical bridge fails. *See Beardsley*, 758 F.3d at 837.

According to Plaintiff, the ALJ erred in crediting the opinion of Plaintiff's treating neurosurgeon, Dr. Zelby, who concluded that Plaintiff was capable of medium work after Plaintiff's neurologically normal exam (with the exception of mild numbness in his lateral right foreleg), good healing of his fusions, and having attained "maximum medical improvement" following surgery despite some continued complaints of pain. [Pl.'s Mem. at 13-15; R. 517-19.] Plaintiff argues that the ALJ failed to appreciate that Dr. Zelby "demonstrably did not consider [Plaintiff's] pain." [Pl.'s Reply at 6.]

There is no evidence in the record to support this purported omission in the ALJ's reasoning, however. To the contrary, Dr. Zelby expressly opined that Plaintiff was capable of medium work despite that "he continues to feel the pain that he describes." [R. 519.] As the ALJ observed, Dr. Zelby's opinion was well supported by his treatment records, including repeated and largely normal neurological findings. [R. 113, citing R. 519, 520, 532, 542, 547, 550, 554, 560 and 562.] As the ALJ further observed, Dr. Zelby was in the best position to assess Plaintiff's functional capacity given his practice specialty and the length of time he treated Plaintiff. [R. 113.] The Court agrees with the Commissioner that the ALJ appropriately credited the opinion of Plaintiff's treating neurosurgeon in accordance with the agency regulations. *See* 20 C.F.R. §404.1527(c) (more weight is given to well-supported treating physicians' opinions because they are most familiar with the claimant's conditions and circumstances).[3]

Nor is the Court persuaded by Plaintiff's assertion that the ALJ improperly assumed that Dr. Zelby's opinion was based on a 2013 functional capacity assessment despite the fact that

---

[3] Although the Social Security Administration has since modified its treating-physician rule, Plaintiff's application was filed in 2015, and accordingly "controlling weight" was to be provided to the well supported opinion of his treating physician. *See* 20 C.F.R. § 404.1527(b)(2) (for applications filed before March 27, 2017); 20 C.F.R. § 404.1520c (for applications filed on or after March 27, 2017).

15

Plaintiff underwent a subsequent fusion surgery. [*See* Pl.'s Mem. at 15.] Although the ALJ noted that Dr. Zelby's assessment was "apparently based on . . . a functional capacity assessment in October 2013," the ALJ expressly found that the opinion was not only consistent with the 2013 assessment, but also consistent with Dr. Zelby's treatment records. [*See* R. 113, citing R. 519, 520, 532, 542, 547, 550, 554, 560 and 562.]

Further, the ALJ sufficiently explained why he credited the 2013 assessment more than Plaintiff's November 2014 (post-surgery) assessment, and why he supposed that Dr. Zelby had done the same, in that the 2014 assessment had been deemed "invalid" since Plaintiff had "exhibited signs of variable levels of physical effort[,] . . . less than full physical effort was noted during a heart rate analysis . . . [, and] there were clinical inconsistencies throughout the evaluation." [R. 113, quoting R. 946.] Moreover, Plaintiff did not offer any medical opinion that his back impairment was more limiting than what the ALJ found. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 803 (7th Cir. 2005) (finding probative the fact that "no doctor ever suggested that any greater limitation was required.").

The ALJ also adequately explained his assessments of the June and November 2015 opinions of the non-examining state agency physicians, who concluded that Plaintiff was capable of light work; the ALJ provided a sufficient explanation of his reasoning in giving these opinions some weight. [*See* R. 114.] *See Craft*, 539 F.3d at 673. As the ALJ explained, he afforded these opinions some weight because the reviewers had credited with great weight Dr. Zelby's opinion that Plaintiff was capable of medium work, and yet they nevertheless concluded without an adequate explanation that Plaintiff was limited to only light work, since his treating physician said he could do more. [*Id.*] The ALJ was not required to provide any further explanation. *See Beardsley*, 758 F.3d at 837.

16

Moreover, as the Commissioner correctly observes, even if the ALJ had assigned great weight to the opinions of the state agency physicians and accordingly limited Plaintiff to light work, the ALJ still would have found him not disabled, because the VE testified that a person with Plaintiff's vocational history who was limited to light work would still be able to perform a significant number of jobs. [*See* R. 54-55.]

Plaintiff argues further that the ALJ erred in failing to include in his discussion a February 18, 2013 treatment record noting that although Plaintiff's back pain had improved, his right leg pain had not, a notation prior to his second surgery that the surgery might make his condition worse, and reference to his treatment records with Drs. Diesfeld and Laich, who Plaintiff saw several months after his date last insured. [Pl.'s Mem. at 14.] It is well-settled, however, that an "ALJ is not required to discuss every piece of evidence but is instead required to build a logical bridge from the evidence to her conclusions." *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009).

Further, the records Plaintiff cites do not contradict the ALJ's conclusion, or render his analysis insufficient. While Plaintiff correctly notes that the ALJ quoted only the portion of the February 18, 2013 treatment note addressing Plaintiff's back pain and not his continued leg pain, this fact does not undermine the ALJ's analysis which elsewhere includes specific consideration of Plaintiff's continued pain complaints. [*See* R. 106-110.] Moreover, consistent with the ALJ's discussion, a review of this treatment note reflects Plaintiff's normal neurological examination and Dr. Zelby's opinion that Plaintiff was capable of work despite his complaints of pain. [R. 811.]

Similarly, the notation that surgery might make Plaintiff's condition worse does not contradict or otherwise undermine the ALJ's reasoning. [*See* R. 1041.] First, the reference to which Plaintiff cites documents potential outcomes of surgery, as opposed to Plaintiff's actual

17

condition. [*See id.*] Further, the ALJ was not obliged to mention every record, and Plaintiff does not explain how this record conflicts with evidence that the ALJ discussed at length, including records of the surgery. *See Roddy*, 705 F.3d at 636.

Plaintiff also does not develop how records post-dating his date last insured would have supported his assertion of disability during the relevant time period, *see Eichstadt v. Astrue*, 534 F.3d 663, 666 (7th Cir. 2008), and in any event the records of Drs. Diesfeld and Laich also do not undermine the ALJ's RFC determination and lengthy corresponding discussion of the evidence. [*See* R. 2262, 2270.] To the contrary, like the records the ALJ discussed, these records also reflect Plaintiff's report of some pain, but largely normal exams and his physicians' conservative approach to treatment. [*Id.*]

Lastly, to the extent that Plaintiff asserts that in evaluating the evidence the ALJ improperly discounted Plaintiff's own description of his symptoms or inadequately assessed his reported daily activities, this too is unpersuasive. [*See* Pl.'s Reply at 6-8.] Notwithstanding Plaintiff's assertions, the ALJ provided several valid reasons supported by the record for discounting Plaintiff's subjective complaints. *See* 20 C.F.R. § 404.1529(c); Soc. Sec. R. 16-3p, 2016 WL 1119029, *7 (March 16, 2016) (itemizing factors to consider in evaluating the intensity, persistence and limiting effects of an individual's symptoms).

First, the ALJ observed that Plaintiff's allegations were inconsistent with the medical evidence, most notably the opinion of Dr. Zelby, the objective medical records, the nature and extent of treatment Plaintiff had received, as well as the activities and symptoms Plaintiff reported to his treating physicians. [R. 110-11.] *See Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]lthough an ALJ may not ignore a claimant's subjective reports of pain simply because they are not fully supported by objective medical evidence, discrepancies between

18

objective evidence and self-reports may suggest symptom exaggeration."); *accord Sienkiewicz*, 409 F.3d at 804.

Second, the ALJ appropriately considered evidence of symptom exaggeration in the records, most notably Plaintiff's inconsistent performance during the 2014 functional capacity assessment, which had caused the evaluator to conclude that "considerable question should be drawn to the reliability and accuracy of [Plaintiff's] reports of pain and disability." [R. 2033-37.] Notwithstanding Plaintiff's argument that the ALJ should have attributed Plaintiff's behavior during that assessment and his continued complaints of pain to mental health issues, he points to no medical opinion in the record to suggest this. [*See* Pl.'s Reply at 6-8.] This Court declines Plaintiff's invitation to reweigh the evidence and substitute its judgment for that of the ALJ. *See L.D.R.*, 920 F.3d at 1152; *Sienkiewicz*, 409 F.3d at 803.

Accordingly, this Court finds that the ALJ properly evaluated the evidence and sufficiently articulated the reasoning upon which he rested his RFC determination.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 15] is denied, and the Commissioner's cross-motion for summary judgment [dkt. 23] is granted. The Court affirms the Commissioner's final decision.

**SO ORDERED.**

Date: 6/17/21

_____
BETH W. JANTZ
United States Magistrate Judge